**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES HURLBUT,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>**Commissioner of Social Security,**<br><br>      Defendant. | No. 11 C 6099<br><br>**Magistrate Judge Rowland** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Hurlbut brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits. For the reasons set forth below, the Court remands this case for further proceedings consistent with this opinion.

**I. Procedural History**

On August 22, 2008, Hurlbut filed concurrent applications for a period of disability and disability insurance benefits. (R. 55). In both applications, Hurlbut alleged disability with an onset date of January 31, 2008 based on depression, anxiety related disorders, panic attacks, over-aggression, and nerve damage to his arm. (R. 55, 62). The Commissioner initially denied those claims on December 23, 2008, and again upon reconsideration on February 13, 2009. (R. 62, 63). On February 20, 2009, Hurlbut filed a written request for a hearing. After proper notice, on July 15, 2010, an Administrative Law Judge

("ALJ") conducted a hearing. (R. 84). Hurlbut was represented at that hearing by attorney Michael A. Glazer. On October 26, 2010, the ALJ issued a written opinion, finding that Hurlbut was not "disabled" under the Social Security Act. Hurlbut then requested Appeals Counsel review, but the request was denied, rendering the ALJ's decision final.

Hurlbut then requested judicial review, for which this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties and 28 U.S.C. § 636(c), the case was reassigned from the District Judge to Magistrate Judge Nolan on February 27, 2012 for all further proceedings, including entry of final judgment. (Dkt. 8). Following Judge Nolan's retirement from the bench, the case was reassigned to Magistrate Judge Rowland on October 1, 2012. (Dkt. 14).

## II. Summary of Administrative Record

James Hurlbut was born on August 14, 1977. (R. 57). He is single and lives with mother. (R. 31-32).

Hurlbut suffers from an anxiety disorder. He testified that he experiences anxiety attacks at least once a week, which he described as "[a] suffocating type of feeling." (R. 36). "I feel like I'm having a heart attack." (R. 37). Hurlbut stated that he tries to avoid things that trigger his attacks, like crowds or intense light and sound. (R. 37). "I detest crowds of any kind." (R. 48). Hurlbut recounted, for example, that he will sometimes be in a check-out line at a store and feel an attack coming on; and he will have put down all his items and leave. (R. 38). He also described a constant "foreboding feeling like something

bad is going to happen." (R. 41). He described his sleep at night is "awful." (R. 44).

Hurlbut also suffers from a depressive disorder. He experiences sadness and crying spells "constantly," although they typically only last a few minutes at a time. (R. 39). He has frequent trouble with headaches, which are "not really" relieved by pain medication. (R. 40). He has thought of harming himself. (R. 41).

Hurlbut reported that he does not have many friends, only "a couple." (R. 38). He talks to friends and acquaintances on-line, more than in person. (R. 49).

Hurlbut is computer literate and a voracious reader. (R. 48-49). His only prior job experience referenced in the record was a part-time job at Capital Fitness, where Hurlbut worked at the front desk. (R. 32). Hurlbut reported that he was let go from that job because he had trouble interacting with customers. (R. 33).

***Treating physicians, Pillars Mental Health Services.*** The record includes extensive notes from Hurlbut's treating physicians at Pillars, a community organization that provides mental health services. (R. 487-505). Hurlbut received treatment there from 2007 to 2011. (R. 478-518). Hurlbut's primary psychiatrist, Dr. Brendan Beresford, diagnosed Hurlbut with major depressive order, generalized anxiety disorder, and obsessive compulsive disorder. (R. 452). The notes indicate that Hurlbut complained, on multiple occasions, of trouble sleeping. (R. 478-79). On March 4, 2009, Dr. Beresford

noted that Plaintiff was having anxiety episodes associated with confusion, and that he felt down and isolated. (R. 488). On April 22, 2009, Dr. Beresford observed Hurlbut as "more depressed" and "irritable." (R. 565). On May 20, 2009, he noted Hurlbut was "anxious … almost panicky" and "was tearful in therapy." (R. 566). On July 22, 2009, Hurlbut was observed as "very distraught, depressed, tearful, anxious." (R. 569). On September 2, 2009, Dr. Beresford noted some improvement in Hurlbut's depression, but observed that he was still irritable. (R. 571). On October 7, 2009, Hurlbut reported that he was o.k., but he reported continued tearfulness, crying spells, panic attacks, loss of interest in activities, anxiety, nervousness, aggression, thoughts about harming himself and others, fearfulness, and paranoia. (R. 573-74). Records indicate that Hurlbut "only leaves [the] house [for] doctor appointments, therapy" and that his "socialization is limited to family, medical appointments and a few friends." (R. 518-19). When depressed, Hurlbut "is not able to concentrate or complete tasks." (R. 605-08).

On March 25, 2009, Dr. Beresford completed a detailed Mental Disorders Report. (R. 520-523). The report states that Hurlbut experiences problems with motivating himself, persisting, interacting with people, and regulating his mood. The report also notes that Hurlbut has poor focus and attention and poor memory for details. It also describes Hurlbut's general response to treatment as poor. (R. 521). Dr. Bresford opined that Hurlbut suffers from "marked" limitations in activities of daily living; social functioning; and concentration, persistence, or pace. Similarly, on May 27, 2010, Hurlbut's

therapist at Pillars, Vernalynne Evano, completed a report stating that Hurlbut suffers from marked limitations in the same three categories of functioning. (R. 518-519).

***DDS Examinations.*** Also before the ALJ was a psychological evaluation prepared by a state agency psychiatrist from the Illinois Department of Disability Determination Services, Dr. Terry Travis. (R. 551-564). Dr. Travis prepared his evaluation on the basis of the medical records on file with the Social Security Administration. Dr. Travis did not consult with Hurlbut in person. Dr. Travis's psychiatric evaluation (referred to as a "psychiatric review technique") rated Mr. Rutherford's condition under the following listings: 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders (Diagnosed adjustment disorder with depressed and anxious mood). (R. 554, 556).

Dr. Travis assessed Hurlbut's functional limitations (known as "B criteria"), and found that he has only "moderate" limitations in activities of daily living; social functioning; and concentration, persistence, or pace. (R. 561).

***Consultative examinations.*** The ALJ also considered a report prepared by consultative examiner Carole Rosanova M.D., in which she was asked whether she agreed with the state agency psychiatrist's assessment of Hurlbut's impairments. (R. 472-76). Dr. Rosanova reviewed medical records and also examined Hurlbut in-person. (R. 472). She concluded that the state agency's assessment was "not unreasonable." (*Id.*).

***Vocational expert.*** Finally, the ALJ considered the opinion testimony of vocational expert ("VE"), Amy Mallory. (R. 51). The VE testified that, given the

functional limitations articulated by the ALJ, a claimant would be able to perform the requirements of representative occupations such as assembler (9,132 jobs in region), hand packager (3,613 jobs in region), and cleaner (9,708 jobs in region). (R. 52-53). The VE also testified that if a person would be off task for at least 20 percent of a workday, or would miss work two days a month, there were no jobs he could perform. (R. 53).

Based on the record described above, the ALJ found that Hurlbut is not disabled (as that term is defined in the Social Security Act) and, therefore, not entitled to benefits.

### III. Standard of Review

To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing not only past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

Regulations under the Social Security Act set forth a five-step process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4). Under these regulations, an ALJ must consider (1) whether the claimant presently has substantial, gainful employment; (2) whether the claimant's alleged impairment or combination of alleged impairments is "severe"; (3) whether the claimant's

impairment(s) meet(s) or equal(s) the specific impairments that are listed in the appendix to the regulations as severe enough to preclude gainful employment; (4) whether the claimant is unable to perform his or her past relevant work; and (5) whether the claimant is unable to perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1520(b)-(f); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). A negative answer at any step other than Step 3 precludes a finding that the claimant is disabled. *Young,* 957 F.2d at 388. The claimant bears the burden of proof at Steps 1-4. In cases of severe impairment, the ALJ's analysis typically involves an evaluation of the claimant's residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). This RFC is used for purposes of Step 4 to determine whether the claimant may work in his or her previous occupations. *Id.*

At Step 5, the burden shifts to the Commissioner, who must "provid[e] evidence showing that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If a claimant's RFC allows him to perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision, courts may not decide facts anew, reweigh evidence, or substitute their judgment for the articulated judgment of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will uphold the Commissioner's decision if it is supported by "substantial evidence," and is free of legal error. 42 U.S.C. § 405(g) (2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.,* 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner (and ALJ, by extension), not the courts. *See Heir v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to evidence that the ALJ finds more credible).

However, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his or] her conclusion," *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001), and "must confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or discuss only the evidence that favors his or her decision. *See Herron,* 19 F.3d at 334. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ must state the reasons he

or she accepted or rejected "entire lines of evidence." *Id.* at 333; *see also Young,* 957 F.2d at 393 (meaningful appellate review requires that the ALJ articulate a reason for rejecting evidence "within reasonable limits"). The written decision must include specific reasons that explain the ALJ's decision, so that the reviewing court can ultimately assess whether the determination was supported by substantial evidence or was "patently wrong." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)).

**IV. Discussion**

Hurlbut raises three arguments in support of his request for reversal of the ALJ's decision: (A) the ALJ's analysis of the treating psychiatrist's opinion was legally insufficient; (B) in rejecting the treating physicians' opinions, the ALJ improperly ignored the opinions of state agency physicians and instead substituted her own independent medical judgment; and (C) the ALJ's credibility determination was legally insufficient. Because they are closely related, the Court will address Hulbert's first and second arguments together.

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician" *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825 (2003); and in fact, the opinion of a treating source is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

In this case, Hurlbut's treating psychiatrist, Dr. Bresford, and his treating therapist, Vernalynne Evano[1], opined that that Hurlbut had "marked" limitations in activities of daily living; social functioning; and concentration, persistence, or pace.

In denying Hurlbut's claim for benefits, the ALJ found that both treating physicians' opinions were undeserving of weight because they were "not supported by the medical record," including the treatment physicians' own notes. (R. 20). The ALJ explained this purported inconsistency between the treating physicians' opinions and the medical records as follows:

> This opinion is not accorded weight in the decision because it is not supported by the medical record, including the treatment records from Dr. Bresford himself. The claimant responded to medications and never reported any side effects negative or otherwise. He does live with his mother, but there is no evidence that he would be unable to function without her. He never reported memory problems or lack of focus, in fact most of the claimant's complaints were situational.

(R. 20).

Hurlbut now argues that the ALJ committed two separate but related errors in rejecting his treating physicians' opinions. First, he argues that the ALJ's analysis of the treating physicians' opinions was legally insufficient because it lacked specificity and failed to account for certain information. Second,

---

[1] Although she is not an M.D., Evano is deemed a "treating physician" because she is a medical expert with relevant expertise who has treated the claimant, 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2); *Bowen v. Commissioner of Social Security*, 478 F.3d 742, 747–50 (6th Cir.2007)

Hurlbut argues that the ALJ did not cite the state agency physicians' opinion or any other medical source, and thus essentially made her own independent medical judgment. The court agrees with both arguments.

As noted above, if a treating physician's opinion is supported by the medical record, and not inconsistent with substantial evidence, it is entitled to presumptive weight. 20 C.F.R. § 404.1527(d)(2); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). If, on the other hand, well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and "is just one more piece of evidence for the administrative law judge to weigh...." *Id.* at 377.

In this case, the ALJ concluded that the treating physicians' opinions were inconsistent with the medical record because (1) Hurlbut "responded to medications"; (2) exhibited the ability to function normally in certain situations; and (3) never complained of a lack of memory loss or a lack of focus. The problem with the ALJ's reasoning, however, is that she failed to sufficiently explain how the above facts undermine the treating physicians' opinions. An ALJ must build an accurate and logical bridge from the evidence to her conclusions so that the District Court may afford the claimant meaningful review of the SSA's ultimate findings. *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2002); *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996) ("we cannot uphold a decision by an administrative agency, … if, while there is enough evidence in the record to support the decision, the reasons given by the

trier of fact do not build an accurate and logical bridge between the evidence and the result."). If the evidence on which the ALJ relied does not support her conclusion, the decision cannot be upheld. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

Here, the ALJ failed to build that bridge, instead relying on conjecture and her own assessment of the medical evidence to conclude that the treating physicians were unreliable. For example, the ALJ stated, without citing any supporting medical source, that Hurlbut responded well to medications. It is unclear how the ALJ came to that conclusion. If anything, the record shows that Hurlbut's medication had to be continuously adjusted from month to month. (R. 490, 492, 494, 497, 500, 504). Second, the ALJ stated that Hurlbut exhibited normal functioning in certain situations (*e.g.* cares for his own hygiene and nutrition, uses the computer, maintains a few meaningful relationships). But, it is not clear why that evidence is inconsistent with the treating physicians' opinion. While it is true that Hurlbut can apparently maintain close relationships with his mother and a few relatives, for example, much of the record also shows that he experiences severe anxiety in public places and among strangers. (R. 495, 506, 508). Finally, the ALJ noted that Hurlbut "never reported memory problems or lack of focus," but she failed to explain how that fact is inconsistent with the treating physician's opinion. Contemporaneous treatment records show that Hurlbut was regularly observed as "anxious" and "obsessive," which supports the treating physicians' opinion, despite the absence of any specific complaints concerning memory or focus. In

sum, the ALJ erred by both failing to sufficiently explain why the above evidence overcame the presumptive weight of the treating physician's opinion, and by relying on her own medical assessment to reject the treating physician's opinion. *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 570 (7th Cir. 2003) (ALJ may not make independent medical conclusion).

The government argues that the ALJ had sufficient grounds to reject the treating physicians' opinions without having to make an independent medical judgment, because she relied on the opinion of the stage agency psychiatrist. (Dkt. 28 at 4). The state agency psychiatrist in this case, Dr. Terry Travis, reviewed Hurlbut's medical records and opined that Hurlbut experienced no more than "moderate" limitations in categories relating to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (R. 460).

The Court, however, must limit its review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir.2010) ("the government's brief and oral argument ... seem determined to dissolve the Chenery doctrine in an acid of harmless error"). And here, the ALJ never cited the state agency psychiatrist's assessment or referred to it in anyway. As Hurlbut notes, the ALJ's failure to reference the state agency psychiatrist's opinion was, in and of itself, an error. Social Security Ruling 96-6p provides that, although ALJs are not bound by state agency consultants, they "may not ignore these opinions and must explain the weight

given to the opinions in their decisions." TITLE II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT, SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996). The rule is meant, in part, to ensure that when rejecting a treating physician's assessment, the ALJ relies on a well-credentialed medical source rather than the ALJ's own independent medical judgment. The Court cannot, therefore, find that the ALJ relied on that opinion in rejecting the treating physicians' assessments of Hurlbut's limitations.

Accordingly, the Court finds that the ALJ erred in rejecting Hurlbut's treating physicians' opinions. Because the Court finds that Hurlbut's first two arguments in support of remand are dispositive, we need not address Hurlbut's third and final argument concerning the sufficiency of the ALJ's credibility determinations.

## V. Conclusion

For the reasons stated above, and pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: May 23, 2013

*Mary M Rowland*

_____
MARY M. ROWLAND
United States Magistrate Judge